IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
NO._____

| | |
|---|---|
| WILKESBORO MAIN, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  **COMPLAINT**<br>)  **(JURY TRIAL DEMANDED)** |
| PENNSYLVANIA NATIONAL MUTUAL<br>CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

**NOW COMES** Plaintiff, by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff, Wilkesboro Main, LLC., (hereinafter "Plaintiff") is a limited liability company authorized to transact business under the laws of the State of North Carolina. At all times relevant to this Complaint, Plaintiff owned and operated a building and/or premises located at 207 W. Main St., Wilkesboro, NC 28697 (hereinafter, the "Property").

2. Defendant, (hereinafter "Defendant") Pennsylvania National Mutual Casualty Insurance Company, is an insurance company organized and existing under the laws of the State of Pennsylvania and licensed in forty-three states and the District of Columbia under the National Association of Insurance Commissioners (NAIC) number 14990. At all times relevant hereto, Defendant was transacting substantial business in the State of North Carolina.

3. Defendant is a for-profit mutual company organized and existing under the laws of the State of Pennsylvania. At all times relevant hereto, it was transacting substantial business in the State of North Carolina.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. The Defendant is subject to personal jurisdiction in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

7. At the times of the relevant hereto, the property was insured by the Defendant under an insurance policy, assigned policy number BP92021420 (hereinafter the "Policy").

8. Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect on April 11, 2024.

9. The Policy provided replacement cost coverage to Covered Property, including the Property, caused by or resulting from any Covered Causes of Loss, including wind and hail.

10. As reported by local media outlets, including television, newspaper, and radio, on or about April 11, 2024, a tornado accompanied by wind and hail caused extensive physical damage to the property. The tornado produced high-velocity winds, approximately one-inch hailstones, and wind-driven debris.

11. On or about April 11, 2024, the Property sustained extensive damage throughout the roofing system, interior, and exterior structure as a direct result of the tornado, wind, and hail The Property's TPO roofing system suffered severe wind-related damage, including widespread tearing, puncturing, and separation of the roof membrane caused by wind-blown debris impacts and uplift forces.

12. On or about April 11, 2024, the storm caused significant detachment and tearing of metal wall panels. Approximately thirty (30) to forty (40) feet of wall length was completely torn off the Property and temporarily covered by tarps. Further, the tornado's high winds caused wrinkling and displacement of the roof membrane, particularly around drains, resulting in loss of adhesion between the membrane and insulation. These conditions created improper drainage and contributed to water intrusion beneath the roofing surface.

13. The engineer's report from Alpha Building Consultants confirmed that the underlying materials were saturated with moisture, evidencing storm-related compromise of the roof's waterproofing system.

14. In addition to the roof damage, there was widespread damage to the interior and exterior metal components, gutters, downspouts, and wall panels as a direct result of wind and debris impact. The tornado forces and hail strikes compromised the structural and weatherproofing integrity of the entire roofing system and associated components.

15. As determined by expert inspection and opinion from Adam Littlefield at Alpha Building Consultants, the scope of necessary repairs at the Property as a result of the April 11, 2024, tornado and hailstorm includes but is not limited to:

    a. Full replacement of the TPO roofing system;

    b. Replacement of all underlying insulation and decking materials;

    c. Replacement of damaged flashing, vents, and metal wall panels;

    d. Replacement of gutters, downspouts, and related metal components; and

    e. Repairs to exterior siding and other exterior building elements impacted by wind and debris.

16. Plaintiff submitted an insurance claim to Defendant (Claim No. 09146783; hereinafter "the Claim") for hail and wind damage to the Property as a result of the April 11, 2024, storm.

17. On or about April 11, 2024, Plaintiff submitted the claim to Defendant within the Policy period.

18. Consistent with the advice and opinions of contractors and consultants, Plaintiff maintained that the TPO roofing system at the Property required full replacement as a result of the wind and hail damage.

19. On or about April 28, 2024, Plaintiff hired Davco Roofing & Sheet Metal, LLC., to perform mitigation services.

20. On or about April 16, 2024, Defendant assigned the claim to Barker Claim Service ("Barker"), a third-party firm, for continued adjustment.

21. On or about April 18, 2024, Barker conducted an inspection at the Property and provided Plaintiff with a preliminary repair and replacement estimate. Barker valued the loss at $83,220.25.

22. After adjusting for depreciation and deductible, Defendant paid Plaintiff the preliminary amount of $70,296.79.

23. These damages are subject to increase due to Defendant not providing sufficient funds to remedy the full extent of damage to the Property along with the rise in costs of building materials.

24. Defendant's estimate significantly undervalued the true scope of the loss and omitted several categories of covered damage, including water intrusion, structural compromise, and extensive membrane failure to the roof.

25. Upon information and belief, in May of 2024, Defendant retained Trinity Engineering, a third-party engineering firm to conduct a second inspection of the Property.

26. On or about May 20, 2024, an inspection of the Property was conducted by Eric K. Cope, a forensic engineer employed by Trinity Engineering and Jacob Withers of Davco Roofing & Sheet Metal, LLC.

27. On or about October 1, 2024, Plaintiff retained VPA Public Claims Adjusting ("VPA Claims") to assist with the investigation and valuation of the Claim.

28. VPA Claims conducted an independent inspection of the Property. The estimate totaled $631,372.71, based on observable and measurable storm-related damage.

29. On or about October 25, 2024, Plaintiff provided VPA Claims' estimate to Defendant.

30. On or about November 21, 2024, Adjuster Jimmy Mattingly sent a reply email to Jason Perry with VPA Claims as follows, "Yes, we received your paperwork and email on this loss. Please be advised that Penn National categorically rejects this submission. Penn National has paid in full and indemnified in full for damages on April 11, 2024. The file will remain closed with no further consideration."

31. On or about November 26, 2024, after repeated requests, Defendant finally provided a copy of the report prepared by its engineer, Trinity Engineering, which revealed no core sampling, no evaluation of temporarily repaired areas, and a limited scope inconsistent with industry standards.

32. In response, on January 8, 2025, Plaintiff retained BEIC, a third-party engineering firm, to conduct an Abbreviated Condition Survey with cores of the existing conditions of the main roof and upper exterior walls on the building at the Property.

33. On or about February 4, 2025, BEIC conducted their Abbreviated Condition Survey Inspection.

34. BECI produced a letter of opinion in response to their Abbreviated Condition Survey Inspection. BECI confirmed widespread tornado-related destruction at the Property

35. BECI's letter of opinion concluded that the only appropriate roof repair method for the Property is a full-roof replacement to restore the Property's structural and weatherproofing integrity.

36. BECI's report was provided to Defendant's adjuster, James Mattingly, for review.

37. James Mattingly responded as follows: "I received your email and Penn National maintains our original position on this loss."

38. Defendant's calculations, estimates, and coverage determinations are absent from the myriad of damage to the Property. As such, Defendant has wholly failed to restore the Property to its pre-loss condition pursuant to the Policy.

39. To date, Defendant has made repair and replacement payments in the amount of $70,296.79.

40. To date, Defendant still owes the remainder of the repair and replacement estimate, which approximately totals $551,075.92. This amount is necessary to return the Property to its pre-loss state.

41. As a result of Defendant refusing to make Plaintiff whole, the Property's post-tornado condition continues to prevent leasing activity, causing ongoing and increasing business losses.

42. As a result of Defendant's delay tactics and repeated and unreasonable property claim denials, Plaintiff has incurred, and will continue to incur significant expenses in mitigating its damages, attorney's fees, litigation costs, and other expenses and damages associated with this claim.

43. At all times relevant to this cause of action, Plaintiff has made itself and the Property available to Defendant, their agents, and their representatives, and has fully cooperated with Defendant, their agents, and their representatives to inspect and investigate all damage caused by the April 11, 2024, storm.

44. To date, Defendant has failed to provide a reasonable basis for their failure to pay Plaintiff's Claim or for their protracted investigation and unreasonable positions taken in the adjustment of the Claim.

45. At all times throughout the investigation of the Claim, Plaintiff complied as promptly as possible with every request made by Defendants for information regarding the Claim and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this Complaint.

46. Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's covered damage under the Policy. Plaintiff has continued to expend time, energy, and resources to provide estimates and further information in support of the Claim to Defendant

## FIRST CLAIM FOR RELIEF
### Breach of Contract

47. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

48. On or about April 11, 2024, Plaintiff's insurance policy for the Property was a valid and enforceable contract between Plaintiff and Defendant.

49. Defendant breached this contract by failing to provide the benefits, coverages, and payments due thereunder to Plaintiff.

50. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered monetary damages in an amount equal to the payments due under the Policy, less any prior coverage payments, as well as consequential, ensuing and other forms of damages as may be proven at trial.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

51. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

52. Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

53. Specifically, Defendant's (1) refused to pay the full amount of the loss after

recognition of a valid claim, (2) engaged in bad faith through wrongful purpose or intent to save money under its coverages, and (3) engaged in aggravating conduct, through evidencing a reckless and wanton disregard of Plaintiff's rights under the Policy as detailed herein.

54. As a proximate result of the Defendant's bad faith breach of the contract, Plaintiff is entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

### THIRD CLAIM FOR RELIEF
**Unfair & Deceptive Trade Practices**

55. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

56. From April 11, 2024, to present day, Defendant's conduct has risen to the level of Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes.

57. Conduct of Defendant that would be found in violation of N.C.G.S. § 58-63-15(11) is a violation of N.C.G.S. § 75-1.1 and is an Unfair & Deceptive Trade Practice.

58. The conduct of Defendant violates one or more of the subparts of N.C.G.S. § 58-63-15(11), including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue;
   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
   d. Refusing to pay claims without conducting a reasonable investigation;
   e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
   f. Compelling [the] insured to institute litigation to recover amounts due

under an insurance policy;

    g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of or refusal to pay a claim;

    h. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed; and

    i. Other particulars as will be adduced through further investigation, discovery, or at trial.

59. Moreover, with Defendant's actual and/or constructive knowledge of Plaintiff's damages, Defendant unfairly and unlawfully failed to promptly investigate, adjust, and pay the Claims in violation of North Carolina law and Chapter 75 of the North Carolina General Statutes. The factually specific conduct in violation of Chapter 75 of the North Carolina General Statutes, in part, is outlined above.

60. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that their acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to consumers, including Plaintiff, and were an inequitable assertion of their power and position over Plaintiff under the circumstances.

61. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

62. As a proximate result of Defendant's unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

63. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

64. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney fees.

WHEREFORE, Plaintiff prays that the Court enter Judgment as follows:

1. That Plaintiff has and recover of Defendant, a sum equal to the amount of benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiff be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. That Plaintiff has such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED, this 10th day of March, 2026.

/s/ *Daniel William Smith*
Daniel William Smith (State Bar No. 49523)
8601 Six Forks Road, Suite 400
Raleigh, North Carolina 27615
Telephone: (336) 477-9259
dwsmith@sstrialattorneys.com
Attorney for Plaintiff